THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:24CR295 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| LEVERNE EUGENE FORTSON, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on numerous motions filed by *pro se* Defendant Leverne Fortson.  Fortson has moved to dismiss his indictment and suppress evidence (Doc. 59), has moved to request the issuance of subpoenas (Doc. 71), has moved to disqualify the undersigned (Doc. 74), and has moved to compel discovery (Doc. 75).  Fortson has also filed various other motions seeking miscellaneous relief.  Docs. 79, 80, 81, 82, 83, 84, 87, 88, 91, and 92. Upon review, the motions are DENIED as detailed here.

The Court notes that Fortson's pleadings are not always straightforward.  He, at times, makes arguments in passing, often unsupported by any factual or legal argument.  However, the Court will endeavor to identify each *conceivable* argument raised by Fortson and address it herein.

1. Authority to Investigate (Doc. 59)

At the outset of his motion to dismiss and/or suppress, Fortson appears to argue that ATF agents lacked authority to conduct an investigation that touched upon drug offenses.  "ATF Special Agents have the power to make arrests, carry firearms, and serve warrants and subpoenas in accordance with 18 U.S.C. § 3051(a)." *White v. United States*, No. 4:15CV1252 SNLJ, 2019

WL 1426292, at *12 (E.D. Mo. Mar. 29, 2019), aff'd, 959 F.3d 328 (8th Cir. 2020). Moreover, § 3051 authorizes ATF agents to make arrests for "*any* felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony." (emphasis added). As such, the Court finds no basis to conclude that the ATF officers lacked the authority to conduct the investigation that led to Fortson's indictment.

2. Entrapment

Fortson contends that officers "unlawfully and maliciously" entrapped him to commit the offenses for which he was indicted. An entrapment defense "requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity." *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002) (citing *United States v. Nelson*, 922 F.2d 311, 317 (6th Cir. 1990)). Predisposition, referred to as "the principal element in the defense of entrapment, focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime." *Mathews v. United States*, 485 U.S. 58, 63 (1988) (internal citations and quotation marks omitted). Predisposition, "by definition, [involves] the defendant's state of mind before his initial exposure to government agents." *United States v. McLernon*, 746 F.2d 1098, 1112 (6th Cir. 1984) (internal quotation marks and citation omitted); *United States v. Johnson*, 855 F.2d 299, 303 (6th Cir. 1988). To determine if a defendant was predisposed to commit a crime, this Court must weigh the following non-exhaustive factors:

> [1] the character or reputation of the defendant, including any prior criminal record; [2] whether the suggestion of the criminal activity was initially made by the Government; [3] whether the defendant was engaged in the criminal activity for profit; [4] whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and [5] the nature of the inducement or persuasion supplied by the government.

2

*Khalil*, 279 F.3d at 365 (quoting *United States v. Barger*, 931 F.2d 359, 366 (6th Cir. 1991)).

Fortson offers no factual or legal argument in support of his conclusory statement that he was entrapped. Moreover, Fortson's criminal history includes a conviction for conspiracy to distribute heroin in 2014 that led to a 108-month term of imprisonment. As such, there is no factual basis to support a pretrial dismissal of the indictment on the grounds of entrapment.

3. Congressional authority

Fortson next appears to argue that Congress lacked authority to pass the Controlled Substances Act ("CSA"). The Supreme Court, however, has previously determined that "[t]he CSA is a valid exercise of federal power[.]" *Gonzales v. Raich*, 545 U.S. 1, 9 (2005). Fortson's argument, therefore, is rejected.

4. Suppression

Fortson next moves on to numerous arguments attacking the search warrants that were issued as part of the investigation leading to his indictment. First, Fortson contends that the affiant, ATF Task Force Agent Eric Centa, failed to include verifying information that he had investigative authority. In so doing, Fortson ignores that Centa swore under oath that he authorized as a law enforcement officer of the United States. Nothing more was required.[1]

In a nebulous manner as will be addressed below, Fortson next contends that the affidavits for the nine search warrants at issue failed to establish probable cause. "Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). The test for probable cause is simply whether "there is a fair probability that contraband or evidence of a crime will be found

---

[1] The Court would note that the Government's oppositive supplied evidence from the United States Marshal Service that Centa has been deputized to work with ATF since October 8, 2021.

3

in a particular place." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) (internal quotation marks omitted). The existence of probable cause must be determined using a "totality of the circumstances" test; that is, the question is whether, given all of the facts known to the police officer, there is a fair probability that contraband or evidence will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

An affidavit in support of "a search warrant need not establish beyond a reasonable doubt that incriminating evidence will be found on the premises to be searched." *United States v. Blakeney*, 942 F.2d 1001, 1025 (6th Cir. 1991). However, probable cause does require a "substantial basis" for concluding that evidence of a crime will be found at the location to be searched. *Id*. (citing *Gates*, 462 U.S. at 238). Moreover, a "person of reasonable caution" would consider predilections revealed by past crimes or convictions as part of the inquiry into probable cause. *See, e.g., United States v. Blanton*, 520 F.2d 907, 912 (6th Cir.1975).

Fortson initially revisits his argument that Task Force Officer Centa somehow misled the magistrate judge when he swore he was a federal law enforcement officer. As detailed above, nothing about this statement was false or misleading.

Fortson also contends that the Government improperly used an administrative subpoena to release private information regarding his cellular service. However, the Government correctly highlights that only Fortson's subscriber information was obtained via this subpoena. A separate search warrant was obtained to review Fortson's historical cell records. *See* Doc. 64-4 a 2-3. Moreover, the Government had no obligation to obtain a search warrant for the subscriber information that Fortson voluntary provided to his service provided. *See United States v. Popa*, 369 F. Supp. 3d 833, 838 (N.D. Ohio 2019) ("Defendant voluntarily disclosed his subscriber information to Time Warner when he contracted to receive internet service. In doing so, he

4

surrendered his privacy interest in that information. The FBI was not required to obtain a warrant before insisting that Time Warner disclose that information.").

Fortson next argues that the affidavits in the warrant applications "were based on stale information and were overbroad." Doc. 59 at 17. While Fortson mentions stale information, he fails to elaborate on that argument in any way. However, the Court notes that the affidavits describe ongoing criminal behavior from December 2023 through June 2024. Nothing in any of the affidavits could reasonably be construed as stale evidence. Similarly, it is unclear what Fortson is claiming with respect to the warrants being overbroad. It appears that he believes the warrants fail to specify the objects to be searched and items to be seized. While Fortson again fails so specify which warrant he is challenging, an independent review of all nine warrants reveals no deficiency. For example, one warrant issued on June 24, 2024, detailed that the residence located at 1467 Holly Avenue, Akron, OH 44301 would be searched. The warrant then detailed *39* categories of evidence that would be seized including information related to financials, travel, employment, currency, controlled substances, and electronic devices. It is difficult to conceive of how the warrant could have been any more specific regarding the location and target of the search. As such, Fortson's argument has no merit.

Fortson next claims that the affidavits improperly relied upon confidential informants that were unreliable and uncorroborated. The Sixth Circuit has previously explained that "in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." *United States v. Williams*, No. 1:22CR203, 2022 WL 17081535, at *1 (N.D. Ohio Nov. 18, 2022)(citation omitted). Similar to his prior arguments, Fortson offers no factual support for his claim. He once again also fails to identify which warrant he is attacking and which informant he believes lacked credibility. However, the

5

Court notes the affidavits at issue have a subheading titled "Reliability of Confidential Sources." That portion of the affidavits goes on to detail the manner in which the confidential sources gained their information about Fortson. The affidavits also include the following from the affiant, TFO Centa:

> I believe the information provided by CS-2 and CS-4 is reliable because their information has been consistently corroborated by an independent investigation by the ATF and the FBI. Additionally, their information has been corroborated by a separate investigation conducted by the Federal Bureau of Investigation (FBI). To my knowledge, CS-2 and CS-4 have never provided information that was deliberately false or misleading.

Doc. 64-4 a 16. The remainder of the affidavit provides great detail regarding the nature of the investigation and the manner in which information was corroborated. As such, the Court has no basis to conclude that the informants were unreliable or that their information was uncorroborated by law enforcement.

Fortson also appears to contend that the affidavits relied on GPS evidence that "was vague and inconclusive." Doc. 59 at 18. Fortson appears to contend that the GPS evidence merely placed him near residences. First, Fortson offers no support for this factual conclusion. Second, Fortson ignores several key factors. Fortson ignores that the GPS data was only one small fraction of the information put forth to establish probable cause. Further, Fortson ignores that the GPS data consistently placed him at residences that TFO Centa had identified as possible stash houses through his investigation. While that information standing alone could conceivably give rise to some form of legal challenge, that information coupled with the remaining *26 pages* that detail the additional bases of probable cause for the warrant (Doc. 64-4 at 16-42) refute any suggestion that the GPS data was somehow relied upon improperly.

In his final argument touching upon the affidavits, Fortson appears to argue that the affidavits failed to demonstrate that he was a drug dealer. While the affidavit was not required to

6

demonstrate that specific fact, the affidavit provided more than ample evidence that Fortson was involved in the drug trade. As such, his conclusory statement to the contrary carries no weight.

5. Fifth Amendment

Fortson labels his next argument as arising under the Fifth Amendment. In support, he argues that much of the evidence being used against him originated in an investigation involving Joe Sanders-Taylor. Fortson appears to argue that the Government failed to mark on the criminal designation form that his charges were related to the same series of events as Taylor's charge. It is entirely unclear how Fortson believes this alleged fact implicates the Constitution in any manner. Contrary to his assertions, it does not suggest some form of wrongdoing before the grand jury, nor does it undermine any aspect of the Government's investigation and subsequent charging decision.

6. Forum Manipulation

Fortson next mentions "forum manipulation" that believes was "an attempt to circumvent internal case assignment procedures[.]" Doc. 59 at 21. It is once again unclear what Fortson is attempting to argue. If he believes that in some manner the undersigned was improperly assigned to this matter, he is mistaken. The matter was randomly assigned without any reference to the prior issuance of warrants or other Court orders. As such, there was no "forum manipulation."

7. Selective Prosecution

Fortson also claims he is the victim of selective prosecution. "To prevail on a selective prosecution claim, a defendant must show that the federal prosecutorial policy had both a discriminatory effect and a discriminatory intent." *United States v. Jones*, 399 F.3d 640, 645 (6th Cir. 2005). Fortson has shown no evidence of either element. Instead, Fortson has argued that

7

"the Government pursued charges against the Defendant despite stronger evidence against others[.]" Doc. 59 at 21. Fortson also appears to again take issue with the fact that he was not the original target of law enforcement's investigation. However, neither of those assertions without more satisfy the elements of selective prosecution.

8. <u>Superseding Indictment</u>

Although his legal argument is unclear, Fortson appears to contend that the superseding indictment in some manner violated his right to due process. As best the Court can discern, Fortson is arguing that the superseding indictment improperly broadened his original indictment. However, while Fortson makes a conclusory statement in this regard, he offers no legal or factual argument. From the Court's independent review, the original indictment charged Fortson with one count of possession with intent to distribute methamphetamine. The superseding indictment maintained that count while adding a conspiracy charge against Fortson and a count for maintaining a drug premises. As those claims are both directly related to the original possession with intent to distribute charge, the Court finds no basis to find that the superseding indictment improperly broadened the charges against Fortson.

9. <u>Speedy Trial</u>

Fortson next argues that his right to a speedy trial has been violated. The Speedy Trial Act requires that criminal defendants be brought to trial within a specified period of time, with certain specified exceptions that warrant a delay. 18 U.S.C. § 3161(c)(1), (h). "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever

8

date last occurs." 18 U.S.C.A. § 3161(c)(1). If a defendant is not brought to trial within the time limit required under the Speedy Trial Act, after taking into consideration any of the statutory exceptions that permit a delay, the "indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). The defendant has the burden of proof to support such a motion to dismiss the indictment. *Id*.

At the outset, the Court notes that the Speedy Trial clock restarted when the superseding indictment was filed and added a co-defendant. S*ee Henderson v. United States*, 476 U.S. 321, 323 n. 2 (1986) ("All defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant."). Accordingly, Fortson's clock started anew on December 17, 2024 when he was arraigned on the superseding indictment.[2] Before the expiration of that clock, on February 13, 2025, Fortson's counsel moved to continue his trial date and indicated that Fortson had executed a waiver of his speedy trial rights. Accordingly, he has not factual basis to argue that his right to a speedy trial has been violated.

Relatedly, Fortson argues that his right to be indicted within 30 days of his arrest was also violated. Regardless of the degree of federal involvement in a state investigation and arrest, only a federal arrest will trigger the running of the time period set forth in 18 U.S.C. § 3161(b). *See, e.g., United States v. Iaquinta*, 674 F.2d 260, 264–69 (4th Cir.1982); *United States v. Wilson*, 657 F.2d 755, 767 (5th Cir.1981), *cert. denied*, 455 U.S. 951 (1982); *United States v. Lai Ming Tanu*, 589 F.2d 82, 88 (2d Cir.1978); *United States v. Mejias*, 552 F.2d 435, 441–42 (2d Cir.), *cert. denied,* 434 U.S. 847 (1977); *United States v. Adams*, 694 F.2d 200, 202 (9th Cir. 1982). Here, Fortson was arrested and charged in Akron Municipal Court on June 26, 2024. That state arrest did not start the 30-day period for his indictment. Fortson was subsequently

---

[2] Fortson's initial time frame from his first appearance, September 12, 2024, also was not violated. On October 24, 2024, the parties jointly moved to extend the trial date by approximately 45 days. The Court granted that motion. Before that time frame expired, the superseding indictment reset Fortson's Speedy Trial clock.

9

indicted while in state custody. Therefore, he has no valid argument that his statutory rights were violated.

      10. Confrontation Clause

Fortson argues in passing that his right to confront and cross-examine witnesses was violated when the warrant affidavits utilized information he could not challenge. The use of the confidential informant statements in the search warrant affidavits does not implicate the Confrontation Clause because the Clause protects a right to confront witnesses *at trial*. *See United States v. Dyer*, 580 F.3d 386, 390 (6th Cir.2009) ("It is well established that a magistrate may rely on hearsay contained in the affidavit when determining whether to issue a search warrant."). *See generally, Barber v. Page*, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right.").

      11. *Franks* Hearing

The *Franks* Court set out the standard a defendant must satisfy to warrant a hearing as follows:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

*Franks v. Delaware*, 438 U.S. 154, 171 (1978)   This high initial burden is designed to prevent defendants from abusing the process and to ensure that frivolous claims do not result in mini-trials. *Id.* at 170.

While not precisely asserting a right to such a hearing, Fortson on repeated occasions has asserted that the search warrant affidavits contained false information. However, he has failed to offer *any* factual basis to demonstrate a singular falsehood. Accordingly, there is no basis to order a *Franks* hearing.

12. Motion is Issue Document Subpoenas (Doc. 71)

In this motion, Fortson seeks permission to subpoena documents from the Portage County Sheriff's Department, the ATF, TFO Centa, and the Assistant United States Attorney prosecuting this matter. While the Court acknowledges there may information properly subject to subpoena, Fortson has failed to identify what he seeks. He notes that the documents that he seeks to be produced will be identified in Exhibit A. However, there is no Exhibit A identifying such documents. Moreover, it appears that Fortson is seeking documents related to TFO Centa's deputization by the U.S. Marshal Service. As noted above, the record already contains that information. As such, there is no basis to order any further disclosure on that topic.

13. Motion to Disqualify (Doc. 74)

Fortson next seeks to disqualify the undersigned. In support, Fortson claims that he has not been afforded the opportunity to oppose certain Government motions, that the Court has accepted certain representations by the Government, that the Court has not enforced the Government's *Brady* and *Giglio* obligations, and that the Court acted in a "hostile" manner toward Fortson.

Initially, Fortson does not identify any substantive motion filed by the Government where the Court granted relief without affording him an opportunity to oppose relief. It appears that the only order issued by this Court on a Government motion while Fortson has been without counsel was the Court's order of April 9, 2025 allowing the Government to file its opposition to

11

Fortson's motion to suppress under seal. Given the procedural nature of the motion and the fact that Fortson received the documents in question, it is unclear how that can form any semblance of bias. Notably, the Court granted *Fortson*'s motion to access certain documents without allowing a Governmental response as well, undercutting any notion that the Court is biased against Fortson.

The remainder of Fortson's allegations are simply, demonstrably false. The Court has not accepted any representations by the Government without some form of verification or legal argument. The fact that the Court has found certain arguments to be persuasive is not an indicium of bias. Moreover, the Court has consistently enforced the Government's *Brady* and *Giglio* obligations, including by written order dated September 13, 2024. Finally, the Court has never demonstrated any hostility with respect to any party in these proceedings, Fortson included. The fact that Fortson has not been in agreement with the Court's rulings on certain issues fails to demonstrate any hostility or any basis to recuse.

14. Motion to Authenticate (Doc. 79)

Fortson next requests that the Court require some additional authentication of the letter that U.S. Marshals Service provided to demonstrate TFO Centa's deputization. Fortson appears unsatisfied by the title of the signatory of the letter on the U.S. Marshals' website. The Court finds no basis to require further authentication. The Court takes judicial notice of the fact that the signatory, Anne Murphy, is an Assistant Chief Deputy. Her correspondence regarding Centa's deputization is well within her job responsibility. The motion is DENIED.

15. Motion for Leave (Doc. 80)

Next, Fortson asks for leave to supplement his prior filings on the basis that he has received additional discovery. To date, Fortson has not identified any argument that he believes

12

requires supplementation based on this discovery. Accordingly, the motion is DENIED WITHOUT PREJUDICE. Should Fortson seek to supplement any prior motions, he must do so with specificity highlighting the newly received discovery that requires some supplementation.

16. <u>Injured Party Motion (Doc. 81)</u>

Fortson asserts that his prosecution must be dismissed because the Government has failed to identify an injured party. Fortson ignores that crimes are public wrongs, visited with punitive sanctions for their violations and prosecuted by and in the name of the sovereign, which is considered the injured party in all criminal cases. Accordingly, this motion is DENIED.

17. <u>Request to appear as an expert witness (Doc. 82)</u>

Fortson requests that the Court recognize *him* as an expert who can provide specialized knowledge "regarding the modus operandi of drug dealers and drug users." Fortson contends as follows with respect to his qualifications:

> Defendant is uniquely qualified to offer insight into street-level drug distribution and use based on the following:
>
> 1. Personal experience with law enforcement and the drug trade, including prior convictions for drug-related conduct:
> • 1995: Drug Abuse
> • 2007: Complicity to Commit Aggravated Drug Trafficking
> • 2015: Conspiracy to Distribute Heroin (leadership role)
>
> 2. Verification by law enforcement: TFO Eric Centa has characterized Defendant as a leadership figure in past investigations, further underscoring Defendant's firsthand experience and relevance.
>
> 3. Lifelong immersion in drug-afflicted communities: Defendant was raised in a household where both parents were addicted to drugs and consistently associated with other addicted persons.
>
> 4. Over four decades of direct contact with drug addicts, users, dealers, and law enforcement officers.

Doc. 82 at 2. At this time, the Court will DENY the motion without prejudice. If following the close of the Government's case, Fortson still seeks this relief, he may present the argument during trial.

18. Jurisdictional Motions (Docs. 83 and 84)

Fortson argues that the Government failed to establish that it has the right to enforce its criminal laws in the State of Ohio. However, this Court has previously determined above that Congress was well within its authority to pass the Controlled Substances Act. Moreover, there is no viable legal argument that the federal Government lacks the authority to carry out that law in Ohio.

Fortson effectively revisits this argument in a second motion again relying upon 28 C.F.R. § 0.56 which provides that "[t]he Assistant Attorney General in charge of the Criminal Division is authorized to determine administratively whether the Federal Government has exclusive or concurrent jurisdiction over offenses committed upon lands acquired by the United States, and to consider problems arising therefrom." It is beyond dispute that the Government has determined that it has concurrent jurisdiction to enforce criminal laws within Ohio. Contrary to Fortson's unsupported conclusions, the federal government in not infringing on Ohio's sovereignty. The motions, therefore, are DENIED.

19. Purity Motions (Docs. 87 and 88)

In these motions, Fortson first asserts that the Government should be prohibited from presenting evidence of the purity of any methamphetamine. Fortson contends that such a fact is relevant only to sentencing enhancements. The Court notes, however, when there is a question whether a defendant intended to distribute drugs, the Sixth Circuit has expressed approved a pattern jury instruction, Instruction No. 14.01, that includes that a jury may consider the purity of

14

the drugs in making such a determination. The evidence, therefore, is relevant, and Fortson's motion in that respect is DENIED.

Fortson also argues that any such evidence is based upon gas chromatography and/or mass spectrometry which he asserts are unreliable. In so doing, Fortson argues that such procedures *can* be found to be unreliable if certain data is not presented. There is nothing in the record to suggest that the Government will not lay a proper foundation for this testimony. Accordingly, the motion is DENIED. If Fortson believes that during trial the Government has not laid such a proper foundation, he may raise such an argument at that time.

20. Emergency Motions (Docs. 91 and 92)

In his final two motions, Fortson seeks an emergency stay while this Court resolves his jurisdictional arguments. Having found no merit in those arguments, the motions to stay are also DENIED.

IT IS SO ORDERED.


May 6, 2025                               */s/ Judge John R. Adams*
                                                        JUDGE JOHN R. ADAMS
                                                        UNITED STATES DISTRICT COURT